CHARLES HALL V. STATE OF NEBRASKA.

280 N. W. 847

FILED JULY 1, 1938. No. 30375.

*Boyd P. McGuire* and *George Gorder*, for plaintiff in error.

*Richard C. Hunter*, Attorney General, *Harry S. Grimminger*, *John G. Tomek* and *Robert G. Fuhrman*, *contra*.

Heard before ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and KROGER, District Judge.

PAINE, J.

The plaintiff in error was convicted of uttering and publishing a forged check in the amount of $275, and was sentenced to two years in the penitentiary and to pay a fine of one dollar and costs, and he is now serving such sentence.

The plaintiff in error has been represented by several different counsel. Cecil R. Boughn was his counsel in the hearing in the county court on April 2, 1937, and also in the trial in the district court, having been appointed upon a poverty affidavit. On October 20, 1937, he filed a motion for new trial, and the next day filed his resignation as counsel. On November 12, 1937, Boyd P. McGuire was duly appointed counsel for plaintiff in error, and on the same day asked leave to amend the motion for new trial by adding an additional ground of newly-discovered evidence, supported by several affidavits. The motion for new trial was overruled, and the clerk of the court directed to prepare a transcript, and the court reporter to prepare the bill of exceptions, which, with cost of printing briefs, were taxed to Thurston county. The argument in the supreme court on behalf of the plaintiff in error was made by attorney George Gorder, of Sioux City, Iowa.

The testimony showed that Leonard Doffin, a farmer residing near Wisner, sold a team of horses to a stranger in Pender, Nebraska, for $275; that the purchaser produced a check, exhibit No. 1, signed in ink, "Frank B. Baughman," but otherwise blank, and that the purchaser referred to the maker of the check as his "daddy-in-law," and filled in the amount and the seller's name and the word "team," in lead-pencil, and received the team of horses for such check. The seller deposited the check in his bank in Wisner, but it was later returned by the Home State Bank of Homer, upon which it was drawn, with the words, "No account 76-1283," written across the face of the check. At the trial D. G. Evans, the banker who made this notation, testified that it meant that they did not have any such account in the bank. He further testified that he had lived in that county for 35 years and never heard of a man by the name of Frank B. Baughman in that community.

The purchaser of the horses had a commercial trucker take them to Dakota City, where they were unloaded and sold by him to Louis W. Madison for $150, who sold them the next day for $193.

Charles Hall, the plaintiff in error, testified that he had lived in Sioux City since 1921, and was a married man, engaged in peddling fruits, vegetables, potatoes, apples, etc. He testified he had not been in Pender for over three years, and said he had never seen Mr. Doffin until after his arrest.

He describes his arrest in this way: That they had recently passed an ordinance in Sioux City, and published it in the newspaper, which required any one who had been convicted of a felony to register at police headquarters; that in 1928 he had been convicted of an assault to do great bodily injury, and while it was not a penitentiary sentence, still he thought he had better go and register, which he did, and after he had been fingerprinted and "mugged," officer Farley told him that the sheriff in Pender wanted to see him, and claimed he had stolen a team of horses. Continuing his testimony, he said: "And I said, 'Morris, I got an education, I have been to college, I'm not an imbecile, a

fool. If I stole the horses would I walk into the police station?' " However, he was held several hours, and the sheriff finally came from Pender with others, and after he had walked across in the "show-up"· the witnesses hesitated, then they went to his home and got his own sheepskin coat and cap and had·him put them on; then some of the four men from Pender identified· him positively ·as the·man who had passed the check, and he was arrested, but he has at all times denied his guilt.

The brief of plaintiff in error sets out, as propositions of law which require a reversal, that·the verdict is not·sustained by the evidence, that the court erred in overruling the motion for a new trial, in spite of the many affidavits setting out newly discovered evidence, and the principal objection is that the court failed to instruct the jury on the one defense interposed, which was an alibi.

Counsel for plaintiff in error argued to this court that the defendant had only one defense in this case, and that was the defense of an alibi, which witnesses gave evidence upon in his behalf, and yet the court gave no instructions whatever on alibi. It is insisted that it was a legitimate defense and, being the only one he had, the court should have told the jury its effect, and how it should be considered by the jury. The court simply instructed that he pleaded not guilty and was presumed to be innocent until proved guilty beyond a reasonable doubt.

In support thereof, we are cited: "Where one defense is mainly relied upon, and evidence is introduced to sustain it, it is error for the court to omit to call the attention of the jury thereto, whether or not it is requested so to do." 16 C. J. 1057.

In *Ferguson v. State*, 52 Neb. 432, 72 N. W. 590, this court held: "It is not reversible error to fail to instruct on the subject of an alibi, where no request to charge upon that feature of the case has been tendered." This holding of the court has since that time been supported by the following decisions: *Heidelbaugh v. State*, 79 Neb. 499, 113 N. W. 145; *Bloom v. State*, 95 Neb. 710, 146 N. W. 965. No

requested instructions were submitted by plaintiff in error to the court at the trial in the case at bar.

We have said that the defense of alibi arises when there is evidence that the accused was at a point where he could not have been guilty of participating in the offense, and if his evidence is strong there arises in the minds of the jurors at least a reasonable doubt that he committed the crime. *Huckett v. State,* 121 Neb. 364, 237 N. W. 159.

While the holdings in all of the courts cannot be reconciled, yet the majority of the courts hold that alibi evidence is not to be considered by itself, but in connection with all the other evidence, and that alibi is not an independent affirmative defense in the same sense that insanity is regarded as an affirmative defense. Annotation, 67 A. L. R. 138. Therefore, it was not error for the court to fail to give the jury an instruction on alibi.

Furthermore, in examining the motion for a new trial, filed by the first attorney who represented the plaintiff in error, the failure of the court to give an instruction on alibi was not raised in any way, and we do not believe it needs to be further considered.

We have carefully examined all of the other errors set out, and find no prejudicial error in the record. The judgment and sentence of the court are therefore

AFFIRMED.