LAWRENCE GATES, PLAINTIFF IN ERROR, v. STATE OF
NEBRASKA, DEFENDANT IN ERROR.

71 N. W. 2d 460

Filed July 8, 1955.   No. 33648.

John C. Mullen and Schrempp & Lathrop, for plaintiff
in error.

Clarence S. Beck, Attorney General, and Homer G.
Hamilton, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an error proceeding from the district court for
Pawnee County.   Plaintiff in error Lawrence Gates,
whom we shall hereinafter refer to as defendant, was
therein convicted of auto theft and, after his motion for

a new trial had been overruled, sentenced to serve 6 years in the State Penitentiary.

Defendant was charged with having, on February 19, 1954, stolen a 1951 black Plymouth sedan, motor No. P-2369642, the property of Mollie Mosteller, from her premises in Pawnee County, Nebraska. The sufficiency of the proof to establish the defendant's guilt is not questioned, consequently we will not set out the facts except as we find it is necessary to do so in connection with our discussion of the errors assigned.

Defendant contends the trial court erred in retaining jurisdiction of the cause and submitting it to a jury when there was a complete lack of proof of the jurisdictional fact of venue, that is, defendant contends the State failed to prove the offense was committed in Pawnee County. This question was submitted to the jury as an issue of fact for its determination.

"Venue is a jurisdictional fact and in this· state the Constitution, art. I, sec. 11, and statute, Comp. St. 1929, sec. 29-1301 (now § 29-1301, R. R. S. 1943), give the defendant in a criminal prosecution the right to be tried by an impartial jury in the county where the alleged offense was committed." Robeen v. State, 144 Neb. 910, 15 N. W. 2d 69.

"The venue of an offense may be proven like any other fact in a criminal case. It need not be established by direct testimony, nor in the words of the information, but if from the facts in evidence the only rational conclusion which can be drawn is that the crime was committed in the county alleged, the proof is sufficient." Weinecke v. State, 34 Neb. 14, 51 N. W. 307. See, also, Medley v. State, 156 Neb. 25, 54 N. W. 2d 233.

The State introduced evidence that Du Bois, Nebraska, is in Pawnee County and that the farm, from which the car was stolen, is just 40 rods north thereof on the west side of and adjacent to State Highway No. 50. State Highway No. 50 runs north and south and follows the main street of Du Bois as it traverses the village.

We think, in view of the foregoing, the following discussion in Weinecke v. State *supra,* is apropos here: "The venue of an offense may be proven like any other fact in a criminal case. It need not be established by positive testimony, nor in the words of the information; but if from the facts appearing in evidence the only rational conclusion which can be drawn is that the offense was committed in the county alleged, it is sufficient. It will be presumed that the trial court and jury knew the boundaries of the county where the trial took place and that the town of Chapman was in such county. Suppose, upon a trial of a criminal cause in Lancaster county, it be proven that the alleged offense was committed within one-half mile of the city of Lincoln, would not the venue be as completely established as if a witness had testified that the precise place was in Lancaster county? To ask the question is to evoke an affirmative answer."

We find this contention to be without merit.

Defendant contends the court erred in overruling his objection to the following answer of Joseph Divis, sheriff of Saunders County, on the ground that it is hearsay. Sheriff Divis had made an investigation the morning of February 19, 1954, because the stolen car had been found abandoned in Wahoo about 8:30 a. m. that day. He testified: "Then later I found — or figured that whoever had driven it into Wahoo had to have some way to get out of town, or else they were still in town. So I checked all the hotels to see if any one had registered, and finding there were none, I checked the bus depot, because I knew that a bus would be leaving shortly, and I found out that two strangers had been in the bus depot and that they had inquired when the next bus left for Omaha."

The rule excluding hearsay is primarily based on the principle that such evidence is not subject to the ordinary tests required by law for ascertaining the truth, that is, the person actually giving the information is not under oath and in the presence of the court and jury where he

can be cross-examined in regard thereto. But the foregoing answer has none of the characteristics of hearsay. It does contain an opinion and a conclusion of the witness which should have been stricken had proper motion been made for that purpose.

But let us assume, for the purpose of discussion, that the court erred in not sustaining the objection as made. Every error does not require a reversal. § 29-2308, R. R. S. 1943; Watson v. State, 109 Neb. 43, 189 N. W. 620; Piercy v. State, on rehearing, 138 Neb. 905, 297 N. W. 137.

As stated in Piercy v. State, *supra:* "Before the error requires a reversal, it must be determined that it was prejudicial to the rights of the defendant, and that as a result a substantial miscarriage of justice occurred."

The only part of the answer that could in any way be material is the following: "* * * I found out that two strangers had been in the bus depot and that they had inquired when the next bus left for Omaha."

Hilda Resek, an employee in the City Cafe in Wahoo, testified defendant and another man entered that cafe about 7 a. m., or shortly thereafter, on February 19, 1954, while she was on duty; that the other man was injured; that the two men stayed in the cafe about 40 to 45 minutes; that while in the cafe they inquired as to the bus service to Omaha; that they made a phone call; and that when they left the cafe they walked to the west. The City Cafe is in the same building with the bus depot and is operated in connection therewith.

Dorothy Luehrs, also of Wahoo, testified that shortly before 8 a. m. on February 19, 1954, she was in Clara's Cafe in Wahoo drinking coffee. This cafe is north across the street and west of the City Cafe, there being a street intersection between them. She testified that while she was sitting at the counter drinking her coffee defendant and another man entered the cafe; that they sat down at the counter and ordered coffee; that the other man was holding a handkerchief to his left eye; that a car drove

by; that they jumped up and left without drinking their coffee; that she walked out behind them; that they ran across the intersection and got in a car parked near the City Cafe; and that they left the cafe about 7:55 a. m.

We think this evidence sufficient, if believed by the jury, to establish the presence of defendant and another man in Wahoo on February 19, 1954, between the hours of 7 and 7:55 a. m., both of whom were strangers in that community. In view thereof we think the admission of this testimony, assuming it to be incompetent, was harmless error.

Section 29-2101, R. R. S. 1943, provides, in part, as follows: "A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following reasons affecting materially his substantial rights: * * * (5) newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial; * * *."

"In a criminal case, a new trial may be granted for newly discovered evidence which is competent, material, and credible, which might have changed the result of the trial and which the exercise of due diligence could not have discovered and produced at the trial." Duffey v. State, 124 Neb. 23, 245 N. W. 1.

"For many years applications for new trials on the ground of newly discovered evidence have not been favored by our courts. Smith v. Goodman, 100 Neb. 284; Fitzgerald v. Brandt, 36 Neb. 683.

"The reason is that the moving party had ample opportunity to carefully prepare his case and to secure all of the evidence before the trial. After the case is lost he is always aroused to diligent activity, which should much better have been put forth before the trial.

"While smarting under defeat and disappointment, he is under the strongest temptation to make a plausible showing for a new trial and thus reopen the case. People v. Taminago, 35 Cal. App. 238. But it has always been

the policy of the law to make such efforts well nigh hopeless and to grant a new trial only in exceptional cases, to the end that counsel will expend more vigorous efforts in making the fullest preparation before the trial and be vigilant and diligent in securing all their evidence without a mental reservation that, if anything is overlooked now, I can easily get a new trial in case of defeat." Wiegand v. Lincoln Traction Co., 123 Neb. 766, 244 N. W. 298.

Defendant filed a motion for new trial on the basis of newly discovered evidence which he contends is material to his defense and which he claims he could not, with reasonable diligence, have discovered and produced at the trial. He contends the court erred in overruling this motion.

In Wiegand v. Lincoln Traction Co., *supra,* we asked the question, "What is reasonable diligence?" Then we answered it by saying: "Facts and circumstances must be clearly set out by the affidavits of the attorneys as well as of the party appealing, from which the court may determine whether the party did in truth use reasonable diligence in searching for this newly discovered evidence before the former trial. Todd v. City of Crete, 79 Neb. 677. In fact, the party must negative every circumstance from which a lack of diligence might be inferred. Axtell v. Warden, 7 Neb. 186. He must show that all proper efforts had been made to discover it before the first trial. Brazil v. Moran, 8 Minn. 236, 83 Am. Dec. 772. * * *

"Defendant must show that the evidence came to him since the trial, and was not equally available to him previous to that trial, and was not simply discovered by exercise of belated diligence.

"The hardship of a particular case cannot weigh against the rule preventing one who has had a full and fair opportunity to prepare his case from dragging out the litigation by bringing in evidence which, with due diligence, he ought to have discovered before the trial. Toledo Scale Co. v. Computing Scale Co., 261 U. S. 399."

It is surprising how quickly after the trial defendant was able to contact all of the witnesses he now says were not then available to him. We do not think defendant, by his testimony, has established that he or his counsel exercised reasonable diligence to discover and produce these witnesses at the trial. We shall, however, discuss the motion on its merits.

Defendant's defense was what is referred to as an alibi. It was properly submitted to the jury. In support thereof he produced the testimony of himself, his wife, Mrs. William Connor, Thomas E. Milbourn, Don L. De Rod, Lee Page, and Earl Marler to establish his presence either in Omaha or Plattsmouth, Nebraska, at all times material to when the Mosteller car was stolen. This was to overcome the testimony of the State showing his presence in a beer tavern in Du Bois about 4 p. m. on Thursday, February 18, 1954, and his presence in Wahoo between 7 and 7:55 a. m. on Friday, February 19, 1954. The stolen car had been abandoned in Wahoo sometime during the early morning of that day.

In order to fully understand the significance of the foregoing we set forth the following from the record:

The State produced evidence to the effect that when defendant left the tavern in Du Bois about 4 p. m. on February 18, 1954, he got into and drove off in a Kaiser car which early the next morning, shortly after 3 a. m., was found abandoned just north of Du Bois on State Highway No. 50; that this car, a 1949 4-door blue Kaiser sedan, had been abandoned because the motor had ceased to function; and that the Mosteller car was stolen from the garage on their farm which is only a short distance to the north and west of where the Kaiser car had been abandoned. The title to the Kaiser car, as well as the title to a 1950 black Mercury club coupé which was found abandoned in Du Bois early the same morning, was in defendant's name.

The State's evidence further shows that about 3 a. m. on February 19, 1954, Marvin Hays discovered someone

breaking into his liquor store located in Du Bois; that he observed the party leave the store, go east across the main street, and get into a Kaiser car; that thereafter the Kaiser car was immediately driven to the north; that Hays and his son, who were armed with a shotgun and 30.06 rifle, attempted to stop the car by firing into it; that one of the bullets from the rifle severed the gas line between the fuel pump and carburetor; and that, because thereof, the car stopped and was abandoned just north of the village of Du Bois on State Highway No. 50.

At the trial defendant testified in detail as to where he was on the morning of February 19, 1954. He testified he got up shortly before 7 a. m.; that shortly thereafter he drove from his home at 1202 South Seventy-second Street to his garage and used car lot located at 606 South Nineteenth Avenue in Omaha; that he then drove to Plattsmouth; that he arrived there about 8 a. m.; and that when he arrived in Plattsmouth he went to Earl's Bar. He then fully described what he did in Plattsmouth prior to his return to Omaha, leaving Plattsmouth for Omaha between 9:30 and 10 a. m. After reaching Omaha he testified he returned to his garage and stayed there the balance of the morning.

At the hearing, in support of his motion for new trial, defendant offered the testimony of Edward Collins and Ervin Steinhoff, both of Nebraska City. Their testimony relates to the contents of the records of the City Cab Company of Nebraska City. This evidence was offered for the purpose of showing that Ervin Steinhoff, one of the cab drivers for the City Cab Company, drove defendant in one of its cabs from the Grand Hotel in Nebraska City to Union, Nebraska, about 7:45 a. m. on February 19, 1954. Just how defendant considers this evidence, which impeaches his own testimony, is material to his defense is difficult to understand but certainly it constitutes no basis for granting a new trial.

Defendant also offered the affidavit of C. L. Page, an employee of the Loyal's Auto Exchange of Omaha who

had testified at the trial under the name of Lee Page, about buying a car from defendant about 3 p. m. on February 18, 1954, and in connection therewith had seen defendant on defendant's used car lot in Omaha. Page had previously testified that he had seen defendant in Omaha during that afternoon and as late as 7 p. m. that night. How the fact that he forgot to relate this incident of buying the car would be grounds for a new trial is hard to conceive. He had full opportunity to testify and if he forgot to relate something, or defendant's counsel forgot to ask him in regard thereto, that is just one of the ordinary incidents connected with any trial. It certainly does not relate to any material matter.

Defendant also offered the affidavit of Leonard Winkler in support of his motion. Winkler was, on February 18, 1954, an employee of Loyal's Auto Exchange, being a salesman or "lot man." The Loyal's Auto Exchange used car lot joins that of defendant. Winkler in his affidavit stated he saw defendant in Omaha about 4 p. m. on February 18, 1954, at his (defendant's) used car lot in connection with defendant's sale and delivery of a 1941 Chevrolet club coupé to C. L. Page. The evidence is cumulative only. Page had testified at the trial that defendant was in Omaha at his (defendant's) place of business that afternoon.

"This court has held many times that, when the new evidence is merely cumulative, it will not warrant a new trial. Hoffine v. Ewings, 60 Neb. 729; Hill v. Helman, 33 Neb. 731. For it is clear that, if the new evidence will simply add a few more witnesses to the same question of fact to which others have testified, it does not warrant a new trial, for the jury should not be controlled by the mere number of witnesses who testify to any given fact." Wiegand v. Lincoln Traction Co., *supra*. See, also, Browne v. State, 115 Neb. 225, 212 N. W. 426.

The United States Department of Commerce Weather Bureau's report of precipitation at its Omaha station between the hours of 7 a. m. and midnight on February 19,

1954, would fall in the same category and further, it is immaterial.

"It is first required that the evidence be competent, relevant and material to the issues." Wiegand v. Lincoln Traction Co., *supra*.

We come then to the testimony of E. A. Ernst and R. J. Andrews together with the affidavit of Joseph F. Libershal. Their testimony would only be cumulative of the fact that defendant was in Plattsmouth sometime during the forenoon of February 19, 1954, and made a phone call from there to someone in Omaha. This is cumulative of evidence produced at the trial. Significant in this respect is the fact that their testimony indicates defendant was in Plattsmouth at a later hour than he testified to at the trial. The record of the telephone company as to the call to Omaha on which defendant seeks to rely shows it was made at 9:15 a. m. At the trial he said he made it about 8:15 a. m. If he made it at 9:15 a. m. it was entirely possible for him to have done so within the scope of the State's evidence which placed him in Wahoo shortly before 8 a. m. that same day. We make this observation in view of the fact that we have said if the probable result of the new evidence would be a different verdict, a new trial should be granted. See Wiegand v. Lincoln Traction Co., *supra*. Such is not the situation here.

As stated in Wiegand v. Lincoln Traction Co., *supra:* "It has been held that new cumulative evidence must be so potent that, by strengthening evidence already offered, a new trial would probably result in a different verdict." We do not think the cumulative evidence here offered to be of that character.

We have carefully examined the record and think the defendant had a fair and impartial trial. In this respect we have not overlooked the fact that on several occasions there were demonstrations of applause by the spectators present. However, in each instance, the court cautioned them in regard thereto and defendant's coun-

sel made no objection, at that time, to the manner in which it was handled. In view of what we have said we affirm the judgment of the trial court denying a new trial.

AFFIRMED.